November 18, 1993
[NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1186

NEW HAMPSHIRE-VERMONT HEALTH SERVICE CORPORATION
d/b/a
BLUE CROSS AND BLUE SHIELD OF NEW HAMPSHIRE,

Plaintiff, Appellee,

v.

UNITED STATES MINERAL PRODUCTS COMPANY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Martin F. Loughlin, U.S. District Judge]

Before

Torruella, Circuit Judge,

Aldrich, Senior Circuit Judge,

and Selya, Circuit Judge.

John T. Broderick, Jr. with whom Mark W. Dean and Broderick &

Dean, P.A. were on brief for appellant.

Daniel A. Speights with whom Speights and Runyan, Michael P.

Hall, and Nixon, Hall and Hess were on brief for appellee.

ALDRICH, Senior Circuit Judge. Defendant United

States Mineral Products Co. in 1968-69 supplied plaintiff New

Hampshire-Vermont Health Service Corp., d/b/a Blue Cross and

Blue Shield of New Hampshire, with a spray-on fireproofing

product known as CAFCO. This was applied to some of the

steel beams and elsewhere in a six story building in Concord,

New Hampshire, that plaintiff was erecting for its offices.

CAFCO contains asbestos, and while that does not cause

atmospheric pollution when not disturbed, plaintiff found

that any reconstruction and even building maintenance

activities would result in its doing so. In 1987 plaintiff

considered various choices with respect to the building:

renovate, to meet its growing operational requirements; sell,

and move to a more modern building; or do nothing. Even this

last raised future, if not immediate, fire code problems.

Before deciding, having spent some $330,000 in testing, and

in attempting asbestos solutions, plaintiff brought suit. At

the time of trial it still had made no final decision.

After a 13 day trial and 12 hours of deliberation

the jury found for plaintiff in the amount of $532,000. On

plaintiff's motion, the court set the verdict aside and

ordered a new trial, confined to damages. The second verdict

was for $3,924,937, from which the court ordered a remittitur

-2-

of $886,872,1 which plaintiff accepted. Defendant appeals,

complaining that there should have been no new trial, but

that if a new trial was proper, it should have included

liability. We affirm.

With respect to granting a new trial at all the

court wrote a thoughtful opinion, giving several reasons.

Its main concern was the inadequacy of the verdict. One of

its special reasons, a sua culpa, was too abbreviated

instructions on the measure of damages. Plaintiff had

sought, and excepted to its refusal, a spelling out of the

concept that if defendant was liable (negligence or strict

liability), plaintiff was entitled to future costs of

replacement irrespective of what remedial procedure it

ultimately adopted, or even if it did nothing. For this it

quite properly cited Wentworth Bus Lines, Inc. v. Sanborn, 99

N.H. 5, 104 A.2d 392 (1954). We agree with the court that in

this special situation, where, even at trial, plaintiff had

made no final decision, it was important to remove doubts or

confusion from the jurors' minds that might tend to reduce

the damages.

Second, the court agreed with plaintiff that there

had been error in respect to the testimony of defendant's

expert Roger Morse. Plaintiff's expert, one Halliwell, had

1. The second jury had been allowed to include an item for
which the court later concluded defendant was not chargeable.

-3-

given seven figure estimates of the cost of removal, and

defendant sought to rebut this with Morse's proposed figure -

- $600,000 - $700,000. Plaintiff objected, properly, for

lack of prior notice. Freund v. Fleetwood Enterprises, Inc.,

956 F.2d 354 (1st Cir. 1992). However, over plaintiff's

objection, the court said that Morse could testify that, on

his factual assumptions as to the amount of CAFCO present,

Halliwell's figures would be "substantially" affected. Morse

improved on this: he testified that his estimate would be

"substantially, substantially affected."

Defendant says, correctly to a point, that since in

Morse's already expressed opinion there was much less

material in the building than Halliwell assumed, it was

obvious, and added nothing, for Morse to say that his

estimate of the removal cost would be less. Hence, defendant

says, there was no prejudice. The difficulty is that the

witness's generality was open-ended, particularly so in what

we can only regard as a theatrical attempt to produce the

effect of the specifics that the court had excluded. The

difficulty was compounded by plaintiff's inability to cross-

examine without burning its fingers. The court could well

find, in light of the verdict, that the jury took

"substantially, substantially affected" as warranting a

figure even smaller than the excluded specifics. No one had

-4-

given a dollar figure that low. The court was entitled to

feel that the jury had been misled, and plaintiff prejudiced.

There were some other possible grounds for granting

a new trial on damages, but we need go no further. The court

acted well within its discretion.

Neither need we go far with respect to defendant's

second complaint, the failure to include the issue of

liability (and all other issues, whatever that means) in the

new trial. This was advanced only as a last minute thought

on a motion for reconsideration. It was, nevertheless,

carefully answered. Defendant repeatedly tells us that

damages and liability were "inextricably interwoven." Phav

v. Trueblood, Inc., 915 F.2d 764, 766 (1st Cir. 1990). If it

had argued this in terms of its being a compromise verdict

defendant might conceivably have had a point. It did not so

contend. We can think of no other possible intermingling of

liability and damages; nor has defendant suggested any,

except to dwell on plaintiff's differing solutions of its

problem. As none of these solutions raised separate

questions of damage, the court acted appropriately.

Affirmed.

-5-